**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**JOHNNY LEE MCKINES, JR., # 197189**                                    **PLAINTIFF**

**VERSUS**                                    **CAUSE NO. 2:22cv167-KS-MTP**

**SHERIFF CHARLIE SIMS, JASON
ENGLAND, JAMES KENNUM, and
FORREST COUNTY JAIL MEDICAL
STAFF**                                    **DEFENDANTS**

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants Sheriff Charlie Sims and James Kennum's Motion for Summary Judgment [48] and Defendant Jason England's Motion for Summary Judgment [50].   Pro se Plaintiff Johnny Lee McKines, Jr., has not responded, and the time for doing so has passed.   Having considered the Defendants' submissions, the record, and the applicable law, the undersigned recommends that the motions be granted.

## BACKGROUND

Plaintiff Johnny Lee McKines, Jr., filed this Complaint, via the prison mailbox rule, on or about November 22, 2022.   (Compl. at 4).   At the time, he was housed at the Forrest County Detention Center in Hattiesburg, Mississippi, where he spent time as a post-conviction inmate. *Id.* at 1; (Omnibus Tr. at 6-7).   He was granted leave to proceed *in forma pauperis*.   His claims and relief sought were clarified and amended by his sworn testimony at the *Spears* hearing.[1]

McKines alleges that he was being treated for an infection while at the jail.   (Omnibus Tr. at 13).   He claims that, on October 14, 2022, Defendant Nurse Jason England administered

---

[1] *See Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987) (stating that allegations made at a *Spears* hearing supersede claims alleged in the Complaint); *Flores v. Livingston*, 405 F. App'x 931, 932 (5th Cir. Dec. 27, 2010).

him penicillin, even though Plaintiff had notified medical staff that he is allergic to penicillin. *Id.* at 13; (England's Mot. Summ. J., Ex. C [50-3] at 1).   When Plaintiff allegedly had an allergic reaction, he contends he was denied medical care.   (Omnibus Tr. at 14-15).   Subsequently, Defendant Officer James Kennum allegedly locked him down in his cell without water for about 36 hours, outside of the jail's disciplinary procedures, and with his cell light on one night.   *Id.* at 18-19, 23-25.   McKines seeks compensatory damages.   *Id.* at 11.

The undersigned construes the allegations as claims under 42 U.S.C. § 1983, for violation of the Eighth Amendment's prohibition against cruel and unusual punishment and the Fourteenth Amendment's due process clause.   Specifically, Nurse England is sued for allegedly giving McKines penicillin.   Kennum is sued for McKines's time on lock down.   Finally, because Defendant Sheriff Charlie Sims oversees the jail, he is also sued for these same claims, as well as the alleged subsequent denial of medical care.   *Id.* at 31.

On December 15, 2023, Defendants moved for summary judgment.   Sheriff Sims and Officer Kennum argue that Sims was not personally involved in the alleged incidents, no Defendant denied Plaintiff medical care, he did not suffer a serious deprivation or denial of due process on lock-down, and Kennum was not deliberately indifferent.   Nurse England asserts that he did not administer penicillin, he was not deliberately indifferent, and Plaintiff did not suffer substantial harm.

**DISCUSSION**

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   To make this determination, the Court must view the evidence in

2

the light most favorable to the non-moving party. *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). A "material fact" is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute about a material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* The party that bears the burden of proof at trial also bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986). The Court considers evidentiary materials cited by the parties and may also "consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009).

SHERIFF SIMS

I.    INDIVIDUAL CAPACITY

McKines first sues Sheriff Sims in his individual capacity, because he was in charge of the jail. Defendants argue Sims is entitled to dismissal because he was not involved in the alleged claims.

"There is no vicarious or *respondeat superior* liability of supervisors under section 1983." *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006). The supervisor must either be personally involved in the violation or otherwise have caused the violation. *Id.*

McKines admits that he sues Sheriff Sims only because he supervises the jail. Because McKines fails to point to any personal involvement or wrongdoing attributable to Sheriff Sims, he is not personally liable for the alleged constitutional violations. He is therefore entitled to judgment as a matter of law, in his individual capacity.

3

II.   U̲NDERLINED̲ C̲APACITY̲

Next, Sheriff Sims appears to be sued in his official capacity as well.   A claim against a governmental employee in his official capacity is brought against the governmental entity itself. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).   Thus, the claims against Sims in his official capacity are actually against Forrest County.

A municipality may be held liable under § 1983 when its official policies or customs violate the Constitution.   *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).   The policy or custom must cause the constitutional tort.   *Id.* at 691.   "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory."   *Id.*   Thus, to establish a claim against the County under § 1983, McKines must prove (1) the existence of a policymaker, and (2) an official policy or custom (3) which is the moving force behind a constitutional violation. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).   "Sheriffs in Mississippi are final policymakers with respect to all law enforcement decisions made within their counties." *Brooks v. George County*, 84 F.3d 157, 165 (5th Cir. 1996).

McKines admits that this claim is based solely on the fact that the other Defendants are supervised by the Sheriff.   McKines points to no official policy or custom in this case, nor does he explain how any such policy or custom caused the alleged constitutional violations. Therefore, he fails to raise a genuine issue of material fact regarding *Monell* liability, and the Sheriff, in his official capacity, is entitled to summary judgment.

NURSE ENGLAND

Next McKines brings an Eighth Amendment claim against Nurse England for allegedly administering penicillin to him, even though he was allergic.   England argues that he did not

give penicillin or act with deliberate indifference and that Plaintiff did not suffer a substantial harm.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828-29 (1994). "First, the deprivation alleged must be, objectively, 'sufficiently serious,' . . . result[ing] in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) and *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Deliberate indifference occurs when the official subjectively "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

It is undisputed that McKines informed a nurse at the jail that he was allergic to penicillin and that McKines was prescribed Azithromycin. He testified at the *Spears* hearing, however, that Nurse England gave him the wrong medication. (Omnibus Tr. at 16). Specifically, McKines claimed that England gave him a dose of penicillin and, before taking it, McKines, "was like, no I can't take that. And [England]'s like no, I'm telling you now, [sic] penicillin. So I took it like he requested." *Id.* at 13-14. Elsewhere, McKines swore that England "[k]new I was allergic to penicillin . . . I even told him myself I could not take it. I ask[ed] him befor[e] he gave me the med's [sic] if it was penicillin. He said no." (Pl.'s Aff. [13] at 2). After taking it, McKines testified he suffered an allergic reaction. (Omnibus Tr. at 14). He could not testify as to whether England knew it was penicillin. *Id.* at 16.

England swore that he "did not intentionally treat Mr. McKines incorrectly and . . . at all

times, followed the applicable provider's orders in good faith [and] acted reasonably in my aid of the medical treatment of Mr. McKines." (England Aff. [50-4] at 2 (¶6)). England further averred that he gave McKines Azithromycin, "prescribed . . . by nurse practitioner Lisa Gatewood due to a positive urinalysis for the sexually transmitted infection, chlamydia." *Id.* at 1 (¶4). England further averred that Azithromycin was "safe and suitable . . . to treat chlamydia for patients with a reported penicillin allergy." *Id.*

Assuming Nurse England did give McKines penicillin, there is still no evidence that England did so intentionally or with deliberate indifference. No evidence was produced to show that he was aware that he was either administering penicillin or not giving what had been prescribed. Without evidence of deliberate indifference, England is entitled to summary judgment.

OFFICER KENNUM

Finally, McKines sues Officer Kennum for allegedly locking him in his cell for 36 to 48 hours. McKines first claims that one day, he and Kennum "had words," and "he followed me toward my cell and slammed the door and told me I was locked down." (Omnibus Tr. at 21). McKines alleges that he had nothing to drink during this time because his cell had no running water, and he was not given anything to drink with his meals. *Id.* at 20-21, 23. He admits, however, that another officer let him out of his cell for one hour during this alleged lockdown. *Id.* at 22. McKines testified that there was a working sink and water fountain in the dayroom. *Id.* at 20, 28. He also complains that his cell light was kept on one night. *Id.* at 18-19. Lastly, Plaintiff asserts that he was only supposed to be locked down as a result of disciplinary punishment and placed in the isolation unit, but he never received a disciplinary charge. *Id.* at

24-25, 34.   Thus, he challenges his lockdown on Eighth Amendment and due process grounds.

I.   CRUEL AND UNUSUAL PUNISHMENT

Again, Plaintiff must show an objectively, sufficiently serious deprivation, resulting in the denial of the minimal civilized measure of life's necessities.   *Farmer*, 511 U.S. at 834. Defendants must provide for the basic human needs, including shelter and reasonable safety, of convicted inmates in their care.   *Williams v. Yazoo City*, 41 F.4th 416, 423 (5th Cir. 2022). Safe and adequate drinking water is a basic human need.   *See Helling v. McKinney*, 509 U.S. 25, 33 (1993); *Dellis v. Corrs. Corp. of America*, 257 F.3d 508, 512 (6th Cir. 2001).   The amount and length of the deprivation should be considered when determining whether a serious deprivation has occurred.   *Hutto v. Finney*, 437 U.S. 678, 686 (1978); *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998).

A.  Denial of Water

Plaintiff first complains that Officer Kennum locked him in his cell without anything to drink for about 36 hours.   Defendants challenge whether this constituted a serious deprivation and whether Kennum was deliberately indifferent.

In some cases, the denial of adequate drinking water can constitute cruel and unusual punishment.   Where summary judgment has been denied, there was evidence of harm, caused either by the denial itself or in combination with other deprivations.   *See, e.g.*, *Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 2000).   *Cf. Dellis*, 257 F.3d at 512 (holding plaintiff stated a claim for purposes of 28 U.S.C. § 1915(e) where he received only one pint of milk and 16.5 ounces of water over a three-day period); *Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 228 (3d Cir. 2015) (holding a claim stated where there was a "complete denial of water" for two days).   For

example, the Ninth Circuit Court of Appeals reversed summary judgment for Defendant prison officials, where prisoners alleged that they had been denied adequate drinking water. *Johnson*, 217 F.3d at 729-30. Specifically, the prisoner plaintiffs alleged they were left outside for four days, in hot, humid weather, sometimes raining, without shelter or regular bathroom access. *Id.* The lack of sufficient bathroom access led to unsanitary conditions, as portable toilets overflowed, and some inmates were forced to soil themselves and not allowed to clean up afterwards. *Id.* at 730. Some suffered from heat related illnesses. *Id.* Plaintiffs alleged that their meals and milk were allowed to spoil in the sun. *Id.* "The inmates also claim[ed] that they received no drinking water until well into the second day, and that their access to drinking water was restricted thereafter." *Id.* Because they provided sworn testimony and affidavits of these conditions and heat related illnesses, the plaintiffs created a dispute of fact as to whether they suffered a sufficiently serious deprivation under the Eighth Amendment. *Id.* at 732.

The Sixth Circuit Court of Appeals likewise considered an appeal of summary judgment in an Eighth Amendment case alleging a denial of water. *Barker v. Goodrich*, 649 F.3d 428, 430 (6th Cir. 2011). In *Barker*, the plaintiff had alleged that he was handcuffed for over twelve hours, in an uncomfortable position that did not allow him to access water or the bathroom, and he missed one meal during this time. *Id*. The court noted that he was cuffed with his hands behind his back, causing his shoulders to become stiff and preventing him from sitting or lying down comfortably. *Id.* at 431. Barker also had lingering problems with his wrists and was subjected "to a significant risk of . . . dehydration and thirst, and pain and damage to the bladder." *Id.* at 431, 434. The court of appeals held this was enough to constitute a denial of the minimal civilized measure of life's necessities. *Id.* at 434.

On the other hand, the Eighth Circuit Court of Appeals affirmed summary judgment for defendants where the inmate was placed in a strip cell for two days, without running water, clothing, or bedding, "with a concrete . . . slab for a bed, and cold air blowing on him [and being] forced to eat meals after using the toilet without washing his hands." *Seltzer-Bey v. Delo*, 66 F.3d 961, 963-64.   This is because the Eighth Circuit found, "Seltzer-Bey did not come forward with evidence that he suffered any injury or adverse health consequences as a result of his confinement" or that defendants were deliberately indifferent.   *Id.* at 964.

Likewise, in a *sua sponte* dismissal, the United States District Court for the Southern District of Texas rejected a pro se prisoner's complaint where he alleged that he was denied water for two days and a toilet for six days and was placed in a cold cell without extra blankets and a jacket.   *Palomo v. Collier*, 2:23cv37, 2023 U.S. Dist. LEXIS 155430 (S.D. Tex. Apr. 14, 2023) (R&R) *adopted* 2023 U.S. Dist. LEXIS 153048 (S.D. Tex. Aug. 30, 2023).   The prisoner alleged that the lack of water and a toilet caused him to suffer constipation "for days or possibly weeks," and that no "drinkable water for two days" caused him to be dehydrated and to "briefly hallucinate." *Id.* at *10.   The court held these harms were *de minimis* and deprivations temporary, so plaintiff both was barred from recovery under 42 U.S.C. § 1997e(e) and had failed to allege a sufficiently serious deprivation under the Eighth Amendment.   *Id.* at *10-11, 13, 17.

Similarly, the United States District Court for the Eastern District of Louisiana dismissed a denial of water claim, *sua sponte*, where there were no physical injuries alleged.   *Tate v. Gusman*, 459 F. Supp. 2d 519 (E.D. La. 2006) (R&R) *adopted* 459 F. Supp. 2d 519 (E.D. La. 2006).   The pro se plaintiff, who sought only punitive damages, alleged he was incarcerated in the Orleans Parish Prison when Hurricane Katrina struck Louisiana on the evening of August 28,

2005. *Id.* at 520-21. He claimed that from the time the hurricane hit that evening, until sometime on August 30, 2005, he was without drinking water, food, or a bathroom and was subjected, variably, to waist and chest-high flooding. *Id.* at 521-22. However, since he admitted that he suffered no physical injury, his case for damages was held barred by § 1997e(e). *Id.* at 524.

In applying these cases, Plaintiff's case is most like *Seltzer-Bey* which, like this one, was at the summary judgment stage. Seltzer-Bey also claimed he was confined to a cell for about two days with no running water. Like Seltzer-Bey, McKines does not produce evidence that he suffered any harm from the alleged conditions. Seltzer-Bey suffered a more intense lock-down than McKines. Seltzer-Bey was subjected to cold temperatures without clothing or bedding and had only a concrete slab to sleep on. On the other hand, McKines alleges the only other infirmity to his lock-down was a cell light being on one night and admits that he had a one hour break during this time in which he had access to water. The deprivations he alleges are neither as long nor as harsh as any of the above cases. On this record, he has failed to create a dispute of fact as to whether he suffered a serious deprivation, or any cognizable injury, from a lack of running water in his cell.

B. Cell Lighting

Plaintiff next sues Kennum, because the light was allegedly turned on in his cell one night. At the *Spears* hearing, Plaintiff testified, "around . . . 12:00 o'clock midnight. . . . My light in my . . . cell came on. . . . I'm already up. . . . And can't sleep because of my stomach pain. And one night I started leaning off my stool . . . and . . . the light stayed on . . . until . . . 6:00 in the morning. . . . It . . . seemed like [Kennum] was antagonizing me." (Omnibus Tr. at

10

18-19). This allegedly occurred after the two "had words" earlier that day. *Id.* at 18. Although McKines surmises that it was Kennum who turned on the light, Plaintiff offers no evidence that this Defendant was in fact responsible. Even if he did turn the light on, there is no evidence that McKines was harmed by such an event. Without evidence of any harm, he has not created a question of fact as to whether he suffered a serious deprivation.

Finally, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18, United States Code)." 42 U.S.C. § 1997e(e). McKines seeks compensatory damages for his Eighth Amendment lock-down claims, but because he fails to produce evidence of any physical harm, both the water and lighting claims are likewise barred by § 1997e(e). *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir 2005).

II.   <u>DUE PROCESS</u>

To the extent McKines complains about the lack of due process in being placed on lock-down, he must show that the deprivation either (1) affected or "will inevitably affect the duration of his sentence" or (2) imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). He does not assert that the alleged lock-down affected or will inevitably affect his sentence. Rather, he complains that he was confined to his regular cell, instead of an isolation cell. Without more, being placed in a cell for two days is not an atypical and significant hardship. *Hernandez v. Velasquez*, 522 F.3d 556, 562-63 (5th Cir. 2008) (holding classification which resulted in one year confined to a shared cell, with leave only for showers, medical appointments, and family

11

visits was not an atypical or significant hardship); *Luken v. Scott*, 71 F.3d 192. 193 (5th Cir. 1995) ("administrative segregation, without more, does not constitute a deprivation of a cognizable liberty interest").

The problem with Plaintiff's regular cell, he alleges, is that he had no running water or anything to drink for about 36 hours.   In considering whether this imposes an atypical and significant hardship, the Court must "consider the severity of the restrictive conditions and their duration."   *Carmouche v. Hooper*, 77 F.4th 362, 366 (5th Cir. 2023).   "District courts should apply a nuanced analysis looking at the length and conditions of confinement on a case-by-case basis to determine whether they give rise to a liberty interest."   *Id.* at 367.   Courts should consider whether the case presents a "dramatic departure from the basic conditions" of the plaintiff's sentence.   *Sandin*, 515 U.S. at 485.

While segregation in and of itself is not atypical, when coupled with extreme conditions or length, it can implicate a liberty interest in its avoidance.   *Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (finding liberty interest in avoiding indefinite placement in a supermax facility where, among other things, "almost all human contact is prohibited"); *Wilkerson v. Goodwin*, 774 F.3d 845, 848-49 (5th Cir. 2014) (39 years in solitary confinement with "significant limitations on human contact").   In contrast to *Wilkinson*, Plaintiff does not claim to have been cut off from almost all means of human contact or to have suffered a visitation ban for an indefinite period, nor does he allege to have been restricted in human contact for decades, as the plaintiff in *Wilkerson*.

In a case closer to Plaintiff's, the Fifth Circuit Court of Appeals affirmed judgment for a prisoner who alleged he was confined in a cell with no running water for seventy-two hours and

with no clothing or bedding for ten days.  *Stewart v. Armstrong*, 174 F.3d 198 (5th Cir. 1999), *reported in full* at 1999 U.S. App. LEXIS 41277.   After another inmate started a fire on his housing unit, Stewart was punished by having the water shut off to his cell and his cell stripped. *Stewart*, 1999 U.S. App. LEXIS 41277 at *2.   The court first affirmed the finding that the water was shut off and cell was stripped as punishment.  *Id.* at *5-6.   The Fifth Circuit next held that "[c]utting off water to Stewart's cell and depriving him of all clothing and bedding except for a paper gown is both significant and atypical of the hardships incident to prison life in the" Mississippi Department of Corrections.  *Id.* at *8.   Notably, the Fifth Circuit agreed with the trial court that the punishments constituted a "significant deprivation of the basic minimal civilized measure of life's necessities atypical of those conditions generally imposed upon inmates."  *Id.* at *7-8.

McKines, however, does not assert that the water to his cell was cut off as punishment. Rather, he testified that his cell never had running water.   (Omnibus Tr. at 19-20).   Even assuming it was a punishment under these circumstances, the duration was shorter than the one in *Stewart* (36 hours versus 72 hours), McKines was released for an hour during this time, and he did not suffer from a simultaneous lack of clothing and bedding.   As discussed previously, he does not offer any evidence that he was physically affected or even made uncomfortable.   He has failed to create a genuine issue of material fact as to whether he suffered an atypical or extraordinary hardship, so it is recommended that his due process claim should be dismissed.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Defendants Sheriff Charlie Sims and James Kennum's Motion for Summary Judgment [48] and Defendant Jason England's

Motion for Summary Judgment [50] be **GRANTED**.   It is further recommended that Plaintiff's claims be dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this Recommendation, may serve and file written objections to the Recommendation, with a copy to the District Judge, the Magistrate Judge, and the opposing party.   The District Judge at that time may accept, reject, or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to the Magistrate Judge with instructions.   Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court.   *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This, the 5th day of March, 2024.

s/ Michael T. Parker
UNITED STATES MAGISTRATE JUDGE